### JACKSON v. RAILROAD COMMISSION OF TEXAS et al.
### No. 547.

District Court, W. D. Texas, Austin Division. Sept. 24, 1935.

Russell Allen and W. B. Harrell, both of Dallas, Tex., for petitioner.

William McCraw, Atty. Gen. of Texas, and William C. Davis, Marvin Trevathan, and W. J. Holt, Asst. Attys. Gen., for respondents.

Before HUTCHESON, Circuit Judge, and WEST and KENNERLY, District Judges.

PER CURIAM.

V. E. Jackson, doing business as Lone Star Refining Company, plaintiff, is the purchaser at judicial sales of lots of oil, which seized by the state as forfeit to it have been condemned and ordered sold in confiscation suits brought in the District Court of Travis county, Tex., by the state of Texas and the Railroad Commission. He holds a bill of sale, for the oil, from the sheriff, and has taken delivery of it from him. The decree of the court, unappealed from, under which he purchased the oil, adjudicates that, as purchaser, he is entitled to move the oil in commerce, and to have and receive permits from the commission to that end. The commission nevertheless refuses the permits which, under the law, plaintiff must have to move his product, on the retributory grounds which will appear.

The bill pleads and the answer admits that the commissioners originally refused him the permits he must have to move the oil and its products on the ground advanced by them in an order that they had discovered that at a different time and in regard to a different lot of oil he had wrongfully obtained a permit to move 127,000 barrels, and that they would issue him no more permits until that amount of oil had been charged to his account. Exactly what was meant by this, how the charge was to be evidenced, and what was to become of the oil so charged is not made clear. It is perfectly clear, however, that the effect of the order was to say that permits would be issued for so much of the oil plaintiff asked a tender for as was in excess of 127,000 barrels, and would be denied for that much.

From the motion of respondents to dismiss the cause as moot, filed on September 4, it appears that this punitive order had been revoked on the advice of the Attorney General that it could not be sustained. From plaintiff's amended bill, and the pleadings and admissions of respondents, it appears that after having revoked the order, and after having advised the court thereof, the commissioners on September 11, 1935, re-entered it, and advancing it again as a cause for refusal, refused the permits asked. Finally it appears indisputably that though under the decree of the state District Court and under the law plaintiff is entitled to have the permits he asks, the commissioners are punitorily refusing them.

Respondents by motion to dismiss advise the court that at least part of the oil in question is still in pits; that as to it the receiver of the state District Court still has a duty to perform in checking the number of barrels to determine whether there is excess or deficit in the amount paid therefor, and they insist that because this is so, the whole matter of this suit is within the exclusive jurisdiction of the state court, beyond that of this court. They do not claim that any proceeding testing the validity of the order of the commission plaintiff complains of has been brought, or is about to be brought, in the state court, nor do they ask any stay of this suit on that ground. They merely assert that this, and the proceeding in the state court, are equally proceedings in rem, and that the state court having already jurisdiction of the subject-matter, this court will not assume it.

It may not be doubted, we think, that the plaintiff had the right to apply to the state court for relief in the enforcement of the decree under which he holds title, nor can it be doubted that had a proper suit been timely brought in the state court under the provisions of 28 USCA § 380, this suit upon request could and would have been stayed. It may not be doubted though that a personal suit such as this is for an injunction against the defendants as individuals to restrain them from wrongfully, in the guise of officials, depriving plaintiff of his property without due process of law, invokes the jurisdiction of this court, and in no manner interferes with the jurisdiction of the state District Court under whose decree he holds.

Upon the undisputed facts plaintiff owns the oil; he has paid for it, he has the court's bill of sale, he has been put in possession of it by the sheriff, he has a decree entitling him to his permits. Nothing remains to be done with regard to the oil except certain mechanical acts of counting or measuring. The doing of such acts this suit does not concern itself with, nor in any manner prevent.

The matter then stands here a suit in personam, to prevent the defendants, acting pretendedly as officials, but in reality as persons, arbitrarily and unlawfully refusing to execute the permits which plaintiff must have, and to which he is entitled, thus depriving him of his property.

■ The motion to dismiss is denied.

■ As to the relief prayed, the conclusion is compelled that the action of the defendants was arbitrary and wholly without warrant or authority of law. It was an attempt on the part of the defendant's without statutory authority to move punitorily, to exact sanctions, and impose penalties for which the law gives no warrant. Under these circumstances, it is the imperative duty of this court to issue the injunction prayed, restraining the defendants from acting personally, arbitrarily, and punitorily, and directing them officially to issue the permits which plaintiff, under the undisputed facts and the law applicable thereto, is entitled to have.

Respect for the agencies of a state government, when those agencies are, or appear to be, acting officially, that is, within the scope of their lawful powers, restrains federal courts from granting injunctive relief against them, especially interlocutory injunctive relief. On the other hand, the compulsion to render justice to him to whom it has been denied, under which courts rest, constrains them not to withhold their remedial writs merely because those against whom they are invoked hold offices under the state.

That governments derive their just powers from the consent of the governed is, in America, more than simply a high sounding phrase. That this is a government of laws and not of men, and that the laws constrain the Governors equally with the governed, is axiomatic here. It is therefore the imperative duty of courts, from which they may not turn aside, to restrain conduct which, in the guise of officialdom, and in the name of authority, imposes arbitrary personal restraints, takes property without due process, denies the equal protection of the laws.

■ The denouncing of offenses and the fixing of punishments is, under our form of government, for the Legislature within appropriate limits and under appropriate forms. Attempts of state officials or boards, no matter how abstractly well conceived or beneficially applied, to enforce laws with regard to matters committed to their care, by punitive measures or retributive exactions invented by themselves, or by other means not authorized by law, strip them, as to those actions, of their official character, and subject them personally to the compulsive force of remedial decrees. Constantin v. Smith (D. C.) 57 F.(2d) 227, at pages 235, 236; Sterling v. Constantin, 287 U. S. 378, 53 S. Ct. 190, 77 L. Ed. 375.

Let the plaintiff have his decree.